## SLIDELL *v.* RIGHTOR et al.

The verdict of a jury on a question of fraud will not be set aside but for manifest error.
Where one who was the principal agent in effecting a sale of lands does not inform the purchasers of the fact of his being a part owner, such omission or concealment, whatever may have been its motive, is not such a fraud as will avoid the contract, where the purchasers have sustained no damage in consequence, and nothing has happened in consequence of such omission which would not have happened without it.

APPEAL by the plaintiff from a judgment of the District Court of Ascension, *Randall*, J. *Beatty* and *Grymes*, for the appellant. *Ilsley* and *Preston*, for the defendants. The judgment of the court was pronounced by

ROST, J.[*] All the questions raised in this litigation, in relation to the title of Rightor and wife to the land in controversy, were finally determined in their favor, in the case of *Rightor* v. *Kohn et al.* 16 La. 501 ; and moreover the title has been expressly admitted in argument to be satisfactory.

The case, as it is presented to us, involves a naked question of fraud, upon which the defendants have obtained the verdicts of two juries. Verdicts on issues of fraud have invariably been held by our predecessors and ourselves as

---

[*]SLIDELL, J. did not sit on the trial of this case, on account of relationship to the plaintiff.

SLIDELL
v.
RIGHTOR.

entitled to great deference, and have never been set aside on appeal, except for manifest error. Our only enquiry, therefore, will be whether manifest error has been shown. *Beaulieu et al.* v. *Furst*, 1 Ann. Rep. 56. The fraud is alleged to consist in this :

1st. That the plaintiff was induced to purchase one undivided ninth of certain waste lands described in his petition for an injunction, at the urgent instance and recommendation of Henry T. Williams; that Williams held at the time the office of Surveyor General of the United States ; that he resided in the neighborhood of said lands; averred himself to be well acquainted with their character and value ; represented them as well worth the price given for them, and stated that more than two-thirds thereof were high and fit for cultivation ; that to deceive the plaintiff, he offered to become, and did actually become, interested in the purchase of one undivided ninth.

2d. That while *Henry T. Williams* was making these representations, which the plaintiff declares to be false, and which he avers mainly induced him to enter into the contract, he, *Williams*, was in truth a secret partner of the vendor *Rightor*, and jointly interested with him in that portion of the land acquired from *Conway* and *Laville*, amounting to 40,000 acres or upwards, and was in fact employed by *Rightor* and wife to procure the sale to the plaintiff and his co-purchasers.

3d. That the said *Henry T. Williams* fraudulently concealed from the plaintiff his interest in the land; that, in pretending to become interested for one ninth, he was in fact vendor and vendee to the knowledge and with the connivance of the defendants, who retained an equal share in that ninth, and that the plaintiff never discovered the fraud till 1842, long after the trial of the case of *Rightor* v. *Kohn et al.*, already referred to.

The material facts are as follows: The plaintiff and others entered into an agreement in writing with the defendants to purchase the lands in controversy at the price of $2 50 per superficial acre, and stipulated therein that a notarial act should be passed when the quantity of land sold was ascertained by a survey, and the purchasers satisfied as to the title. The plaintiff himself, being an attorney-at-law of high standing in his profession, was selected by his co-purchasers to examine the titles, and, upon his favorable report, the purchasers acknowledged them to be satisfactory. After this acknowledgment, the promise to sell of *Rightor* was binding upon them. The apparent legal title was in *Rightor*, and, after he signed this contract *Williams* was divested of all interest in the land ; whatever equitable claim he may have had was against *Rightor* alone for his share of the proceeds of the portion acquired from *Conway* and *Laville*. His rights as well as the obligations of the purchasers, were fixed by this contract.

The circumstance that the parties interested in the purchase permitted *Williams* to become interested for one ninth in the notarial act of sale, passed some months afterwards, does not, in our opinion, place him in the position of vendor and vendee. That very act states that the other parties had already purchased the land, and, if they had, *Williams* had no interest in it at the time he became a partner. We are satisfied that he was permitted by the other purchasers to share in the speculation, under the belief that, from his vicinity to the land, his habits and his pursuits, he would be a valuable auxiliary to carry it to a successful result; and that he himself entered into it under the influence of the popular delusion prevailing at the time, and firmly believing that

he would realise his share of the million of dollars of profits, promised to the company by one of its members, the engineer *Zimpel*. Had *Williams* not taken this interest, the other parties were bound for the whole ; and the fact that he did take it is inconsistent with the fraudulent intent charged to him, and shows that he believed the land worth the price paid for it. If in reality it was not worth that price, the interest which he took diminished the loss of the other parties instead of being an injury to them.

But it is contended that it has been shown that the plaintiff and his co-purchasers entered into the first contract with *Rightor*, on the representations of *Zimpel*, one of the members of the company, now absent from the State, who told them that he derived his information as to the nature and value of the land from *Henry T. Williams*. Two juries have passed upon this evidence without giving it faith, and we cannot say that they erred. Evidence to prove fraud must be strong, consistent and unimpeachable. *Follain et al.* v. *Dupre et al.*, 11 Rob. 458. 2 Rob. 47, 94. The evidence adduced in this case is hearsay, coming from a person who is still alive. If he, and the witnesses who relate his declarations, were without interest in the event of the suit and the questions at issue, hearsay evidence would be incompetent to establish the specific fact alleged. Its intrinsic weakness, its incompetency to satisfy the mind as to the existence of the fact, and the frauds which might be practised under its cover, combine to support the rule that hearsay evidence is totally insufficient. The principle of this rule is, that such evidence requires credit to be given to a statement made by a person who is not subjected to the ordinary test enjoined by the law for ascertaining the correctness and completeness of his testimony ; namely, that oral testimony should be delivered in the presence of the court, or a magistrate, under the moral and legal sanction of an oath, and where the moral and intellectual character, the motives and deportment of the witness can be examined, and his capacity and opportunity for observation, and his memory, can be tested by a cross-examination. Such evidence moreover is very liable to be fallacious, and the persons communicating it are exposed to the danger of a prosecution for perjury. This rule applies though the declaration offered in evidence was made upon oath, in a proceeding where the parties were not the same. 1 Greenleaf, Evidence, nos. 99, 124, 125. But when it is considered that *Zimpel* was himself one of the purchasers, and that his pretended declarations are supported exclusively by the evidence of the others, no doubt can exist that the jury properly exercised the discretion vested in them.

A bill of exceptions was taken to the opinion of the judge admitting that testimony, on the ground that as the mortgage given to secure the price is indivisible, every part of the land sold is affected to the payment of the note sued on, and the witnesses have a direct interest in the event of the suit. This question is by no means free from difficulty. But as we concur with the jury that the evidence is insufficient and inconclusive, it is unnecessary to determine it.

It is not material to ascertain the object which *Williams* may have had in view in not informing the other purchasers of his connection with *Rightor*. That connection appears to have been generally known, and had it not been, if they have sustained no damage in consequence of it, and nothing has happened which would not have happened without it, this omission or concealment on the part of *Williams*, whatever be its motive, is not such a fraud as would avoid the contract against the defendants.

This purchase was one of the wild speculations so common at the time it took place, not creditable perhaps to the wisdom of the parties concerned, but unattended, in the opinion of the jury, with any circumstances tending to impeach their honesty or good faith. If three-fourths of the land had been fit for cultivation, as it is alleged *Williams* represented it to be, it could not have been purchased at any time for the price given for it. It was originally granted to the front proprietors for the cypress timber that is on it, and it is well known that cypress swamps are not fit for cultivation. The object of the purchasers, as shown by the letter of the plaintiff to *Williams* and by other evidence, was to make the timber available by the extension of the New Orleans and Carrollton railroad through it, and by the branches it was authorized to extend to the Mississippi river. A plantation situated in front of the lands was purchased for that purpose at an enormous price by the company, and the circumstance that *Williams* joined in that purchase may well have been considered by the jury to be conclusive as to his delusion and good faith in the entire adventure.

More than two years after the purchase, and after the company had had a survey of the land made in such a manner as to ascertain its true character, the plaintiff had repeated conversations with the surveyors employed to make it, and was informed by them of the nature and quality of the land. He expressed neither surprise nor disappointment at the information thus received, but, on the contrary, continued to assert, on the strength of it, that the purchase was a most desirable one, that the company would erect saw-mills, establish lumber-yards on the river, and realize immense revenues from the timber alone, besides establishing plantations afterwards; though he did not put entire faith in the assurance given him by *Zimpel*, that their profits would exceed one million of dollars, considering *Zimpel* as rather a visionary man.

The revulsion in progress at the time these declarations were made, and the suspension of the Carrollton Bank, defeated the speculation. But the parties have had the benefit of it, and nothing in the record would authorize us to say that the jury erred in coming to the conclusion that they received what they bargained for. *Thorn* v. *Beaman*, 1 Ann. R. 270. *Hall* v. *Brashear*, 2 Ann. R 392.                                   *Judgment affirmed.*